UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MONIQUE N. BRADY | : |
| | : |
| Petitioner, | : |
| | : |
| v. | : Civ. No.: 3:21 cv 1671 (SVN) |
| | : |
| W. HESS, Acting Warden of Federal | : |
| Correctional Institution at Danbury, and | : |
| MICHAEL CARVAJAL, Director of | : |
| The Federal Bureau of Prisons, in their | : |
| official capacities | : |
| | : |
| Respondents | : |

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. §2241

### PARTIES

1. Petitioner Monique Brady (hereinafter "Petitioner" or "Ms. Brady"), BOP Register Number 12117‌0-70 is a 46 year-old woman who, at all times relevant herein has been in the custody of the Bureau of Prisons (hereinafter "BOP") at FCI Danbury and is currently housed in FCI Danbury's women's minimum-security camp (the "camp"). Ms. Brady suffers from four (4) medical vulnerabilities, recognized by the Center for Disease Control ("CDC"). These medical vulnerabilities include (a) bursitis, (b) arthritis in the right foot and (c) Carpal Tunnel Syndrome, for which she takes corticosteroids that has resulted in her being immunocompromised. Ms. Brady also suffers from hypertension, a 25-year smoking history, a BMI "obese" rating and has been instructed by BOP's medical staff that she should not take the second COVID-19 vaccination and, by extension, any booster vaccine. All of those diagnosed medical conditions place Ms. Brady at significantly heightened risk of severe illness or death in the event she becomes infected with COVID-19.

2. Respondent, W. Hess, is the acting Warden of FCI Danbury and is responsible for and oversees all day-to-day activity at FCI Danbury, and all aspects of the operation and of the functioning of FCI Danbury. His responsibilities include ensuring the safety of all in the institution and ensuring the orderly running of the institution. Respondent Hess is aware of the harms of COVID-19, but he has adopted and enforced a policy that leaves Petitioner and all those similarly situated exposed to infection, severe illness, and death due to COVID-19. Respondent Hess is the immediate physical custodian responsible for the detention of the Petitioner at FCI Danbury. He is sued in his official capacity.

3. Respondent, Michael Carvajal, is the Director of the Federal Bureau of Prisons and, in that capacity, is responsible for the safety and security of all persons, including Petitioner. He is sued in his official capacity.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioner seeks relief from being held in custody in violation of the Eighth Amendment to the U.S. Constitution.

5. In addition, the Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 1331 (federal question) in that the Petitioner's claims arise under the federal statute providing for habeas corpus, 28 U.S.C. § 2241, and under Article I, § 9, cl. 2 of the U.S. Constitution (Suspension Clause), as Petitioner is held in violation of the Eighth Amendment to the U.S. Constitution.

5. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred and continue to occur in this district.

  I.  **Petitioner, a medically vulnerable inmate, remains at FPC Danbury with an Unacceptably Heightened Risk of Injury and Illness if she contracts one or more of Covid-19's many variants and strains**

6. In the class action case of *Whitted et al. v. Easter* (20-cv-00569) U.S. District Court for the District of Connecticut, Petitioners, through class counsel, in a Petition in excess of 70 pages, complained of Covid-19's stranglehold of FCI Danbury and the conscious indifference respondents held in addressing inmate safety to those medically vulnerable to the effects of Covid-19. Petitioner requests that this Court take judicial notice of the *Whitted v. Easter* case, including all pleadings filed, all hearings conducted, and all exhibits provided. The many alleged failures of Respondents, Petitioners complained of included:

   a). Failed to Proceed as Promptly as Required in this Crisis to De-Densify and to Implement the Necessary Social Distancing at BOP Facilities and at FCI Danbury in Particular

   b). Failures to Triage Cases, Diagnose and Isolate Disease

   c). Failure to Respond Adequately to Cases of Close Contact or Observe Appropriate Quarantine/Isolation

   d). Failure to Implement Adequately Social Distancing Measures

   e). Failure to Implement Necessary Hygiene Measures

   f). Failure to Plan Adequately to Prevent or Mitigate the Spread of COVID-19 Infection

   g). Failure to Implement the Training and Interventions Necessary to Prevent the Spread of COVID-19

   h). Failures to Respond to the COVID-19 Epidemic Have Further Put Petitioners and Putative Class Members at Unacceptably Heightened Risk of Injury and Illness Unrelated to COVID-19.

7. The class action lawsuit resulted in the parties' reaching a Settlement Agreement, approved by the Court. Petitioners' counsel were required thereafter to bring multiple Motions for Specific Performance, due to Respondents' failure to comply with the terms of the Settlement Agreement. The terms of the Settlement Agreement expired on October 31, 2021.

8. While Petitioner was a member of the class action in *Whitted et al. v. Easter; 20-cv-00569*, the Respondent, BOP's reviews of Ms. Brady for home confinement have been repeatedly noncompliant. In her first review, the Home Confinement Committee (the "HCC") failed to consider her history of smoking and denied her based on percentage/amount of time served, contrary to both the Settlement Agreement and Court Order. In her second review, the HCC used an erroneous "totality of the circumstances" standard and based its denial on unsubstantiated concerns for Ms. Brady's own safety if released. With her third and latest review, rather than focusing on whether Petitioner presented an immediate danger to the community, the HCC repeated its reliance on purported concerns for Ms. Brady's own safety—contrary to the *Whitted* Settlement Agreement and Judge Shea's explicit guidance—and focused its reasons for denial on victim impact and opposition to release.

9. Class counsel filed motions to enforce the Settlement Agreement, the last of which was eventually referred to Federal Magistrate Farrish, who was unaware of Ms. Brady's inability to take the second shot or additional boosters. Magistrate Farrish's denial of Petitioner's re-review did not paint a full picture of her medical vulnerabilities and his recommendation was to deny Ms. Brady further re-reviews with HCC. Class counsel filed an objection, but to date, Judge Shea has neither scheduled a hearing on class counsel's motion nor scheduled a requested status conference. The terms of the Settlement Agreement expired on October 31, 2021, leaving Ms. Brady no additional remedies other than filing the instant Petition for Writ of Mandamus.

10. As part of the *Whitted* settlement Agreement, the HCC has granted home confinement, during the course of litigation, to more than sixty individuals convicted of fraud, bribery, or tax related offenses (or other non-violent, non-sexual, and non-drug related offenses). Most strikingly, as set forth in class counsel pleadings, a review of home confinement denial decisions has revealed that Ms. Brady is one of only three individuals denied home confinement under the Settlement Agreement who are first time offenders with Minimum PATTERN scores serving sentences for non-violent and non-sexual offenses. Of those approximately sixty fraud/bribery cases (or other non-violent/non-sexual/non-drug cases) where the HCC has granted home confinement, nineteen individuals had higher PATTERN scores than Petitioner has. (16 individuals had Low scores; three had Medium). In at least 5 of the cases, the loss amounts to victims were higher than in Petitioner's case. The fact that Petitioner committed a serious fraud offense is not indicative of her being an immediate danger to the community. In addition, many of the individuals granted home confinement have had lower tier CDC risk factors than Petitioner. In particular, of these approximately sixty cases, at least thirteen involved individuals with only Tier II conditions under the CDC's previous categorizations (conditions that now fall in the second or fourth tier on the CDC's Evidence Table). The fact that Petitioner had one dose of the vaccine also does not explain her disparate treatment. In at least six of these sixty cases, BOP has granted home confinement to individuals who have had one shot and were expected to receive another shot in the near future. Overall, home confinement has been granted in two hundred cases since the *Whitted* litigation began. Given the history of grants of home confinement in similar cases, as well as the HCC's exceedingly rare rate of denial in similar cases, equitable considerations strongly favor Petitioner's release to home confinement. Given, not only her medical vulnerabilities, but also due to her disparate treatment in the *Whitted* litigation.

11. Dr. Greene, the clinical director of FCI Danbury and charged with protecting the health of people incarcerated at FCI Danbury, has advised petitioner that she is unable to be fully protected from the COVID-19 virus. This fact materially impacts the weighing of inmate safety and public safety and given Petitioner's inability to be safely housed at the camp, to be released to home confinement as relief from being held in custody in violation of the Eighth Amendment to the U.S. Constitution .

12. Dr. Greene advised Ms. Brady not to take the second dose of the vaccine given the allergic reaction she had to the first dose. Dr. Greene has been Petitioner's treating doctor since she arrived at FCI Danbury. Based on his in-person assessment of his patient, Dr. Greene advised Petitioner not to take the second dose. An exhibit in the *Whitted* litigation stated that "Inmate was advised not to take the 2nd dose of the vaccine because her previous somatic experience following the 1st dose could in deed[sic] be a harbinger of a more serious (re: systemic) somatic response with the 2nd dose."). As recent as July 16, 2021, the CDC, via its website, updated its warning to people in congregated populations, stating: "People who are immunocompromised should be counseled about the potential for reduced immune responses to COVID-19 vaccines and to follow current prevention measures (including wearing a mask, staying 6 feet apart from others they don't live with, and avoiding crowds and poorly ventilated indoor spaces) to protect themselves against COVID-19 until advised otherwise by their healthcare provider." The CDC explains further that "data suggest immune response to COVID-19 vaccination might be reduced in some immunocompromised people including, but not limited to, people receiving chemotherapy for cancer, people with hematologic cancers such as chronic lymphocytic leukemia, people receiving stem cells or organ transplants, people receiving hemodialysis, and people using certain medications that might blunt the immune response to vaccination (e.g., mycophenolate, rituximab, azathioprine, anti-CD20 monoclonal antibodies, Bruton tyrosine kinase inhibitors)." Moreover, per the CDC, "[c]lose contacts of immunocompromised people should also be encouraged to be vaccinated against COVID-19 to help protect these people." As a person who cannot be fully vaccinated and one who is an immunocompromised individual, Petitioner lives in a risk-filled population. If she is offered a booster shot, Ms. Brady will need to decline for the same reasons for which Dr. Greene told her to refrain from taking the second shot.

13. The Camp population is currently at approximately 64 women as compared to the population of 153 at the Camp when the *Whitted* litigation was filed. However, FCI Danbury closed Dorms A and D in the Camp, so the women are crowded into Dorms B and C. Double bunking in those dorms has begun, and staff have informed women in the Camp to expect more double bunking with the arrival of many more women at the Camp. Living in even tighter quarters places Petitioner in further risk of the severely ill effects of COVID-19 if contracted.

14. Petitioner remains at risk for contracting COVID, particularly given the inability to socially distance, inadequate COVID-19 detection practices at the facility, and the emergence of the highly contagious Delta and Omicron variants in the region. FCI

15. FCI Danbury simply cannot ensure Petitioner's safety from the severely dangerous and potentially life-threatening effects of her contracting COVID-19. FCI Danbury continues to thwart its responsibilities in protecting inmates' health, safety and welfare. No longer can the congregate setting of the camp in which Petitioner resides become more congregated, denser, without dangerously imperiling Ms. Brady's daily fears and more importantly her health. Scientifically based evidence exists that, with Petitioner's medical vulnerabilities, she is not safe to be double-bunked with another inmate in a tight living space in a dorm, which at one time was one of four and now houses the same number of inmates (and growing) in two dorms. FCI Danbury's conscious indifference to inmate safety to the perils of COVID-19 and its many variants necessitates the instant Petition for Writ of Mandamus and makes said filing reasonable, necessary and warranted.

## II. CLAIM FOR RELIEF
### (Declaratory and Injunctive Relief for Violation of the Eighth Amendments)

16. Petitioner realleges and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein

17. Respondents are holding Petitioner in violation of the Constitution by detaining her in the face of significant threats to her health and safety without taking sufficient steps to prevent that harm.

18. Respondents' failure to provide adequate medical care in response to a widespread outbreak of a contagious disease constitutes deliberate indifference to the serious, known medical needs of detainees, thereby establishing a violation of the Eighth Amendment of the United States Constitution.

19. Respondents' failure adequately to protect Petitioner from these punitive conditions or release her from the conditions altogether (given her inability to safely take the second vaccine or subsequent booster shots), constitutes deliberate indifference to the serious known medical needs of Petitioner, thereby establishing a violation of the Eighth Amendment of the United States Constitution.

20. Respondents were aware of the medical needs of Petitioner, especially since BOP's own Dr. Greene advised Petitioner not to take the second dose of vaccine, and by extension any and all future booster shots.

21. Respondents knew of and disregarded an excessive risk to health and safety.

22. Respondents failed to act with reasonable care to mitigate these risks.

23. Because Respondents failed to act to remedy Petitioner's degrading and inhuman conditions of confinement in violation of her Eighth Amendment rights, Petitioner seeks relief under this Writ of Habeas Corpus.

24. Because of the unlawful conduct of Respondents, Petitioner is threatened with imminent physical injury, pain and suffering, emotional distress, humiliation, and death.

25. Petitioner has no adequate remedy at law and will suffer irreparable harm unless the court acts immediately to grant the relief requested herein.

### III. THE NEED FOR ENLARGEMENT AS A PROVISIONAL REMEDY

26. Federal district courts have authority, when habeas actions are pending, to "enlarge" the custody of petitioners. Enlargement is not release. Rather, it is a provisional remedy that modifies custody by expanding the site at which it takes place, upon order of the court, from a particular prison to another setting; as requested here, to home confinement.

27. The enlargement power stems from Congress's authorization of federal judges under the habeas statutes to "summarily hear and determine the facts and dispose of the matter as law and justice require" as well as the courts' inherent powers. *See* 28 U.S.C. § 2243.

28. To qualify for the enlargement remedy, an individual must show "extraordinary circumstances" and that the underlying claim raises "substantial claims." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001).

29. Petitioner meets these requirements because of the extreme risk that COVID-19 poses, especially in light of her medical conditions, and because of the particular conditions of confinement at FCI Danbury. If petitioner remains incarcerated, there is a high risk that she will contract COVID-19 and, as a result, suffer severe illness or death. Immediate release to permit petitioner to serve her sentence on home confinement during the pendency of this action is thus the only way to effectuate the eventual habeas remedy. Petitioner has further shown that she was treated unjustly under the *Whitted* class action case, afore-referenced, when her actual medical conditions were failed to be addressed by HHC and Magistrate Farrish.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Pursuant to 28 U.S.C. § 2243 and this Court's inherent powers, enlarge petitioner's custody, pending disposition of the underlying petition;

c. Pursuant to 28 U.S.C. § 2243 issue an Order to Show Cause requiring Respondents to answer as to why the habeas petition and relief sought herein should not be granted;

d. Issue a Writ of Habeas Corpus and/or pursuant to Fed. R. Civ. Pro. 65, enter a temporary restraining order, preliminary injunction, and permanent injunction requiring Respondents to release Petitioner from custody or to home confinement;

e. Enter an order pursuant to 28 U.S.C. § 2201-2202, declaring that Respondents' policies and practices regarding COVID-19 violate the Eighth Amendment to the United States Constitution; .

f. Appoint *pro bono* counsel for Petitioner to represent her in the within action;

g. Award appropriate attorneys' fees; and

h. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

_____
MONIQUE N. BRADY, *pro se*
BOP Registration No.: 12117-070
FCI DANBURY
FEDERAL PRISON CAMP
33 ½ Pembroke Rd.
Danbury, CT 06811